I have a procedural question before we start. Are any of the amici planning on making an argument, or is anyone splitting their time? I don't believe so, Your Honor. All right. All right, thank you. Eric Carlson of the National Senior Citizens Law Center for Plaintiffs' Resident Councils of Washington and the Long-Term Care Ombudsman Program of the State of Washington. I'd like to reserve two minutes for rebuttal, please. Under Step 1 of Chevron, congressional intent indicates that feeding is a nursing or nursing-related service, a nursing home reform law. The Secretary, however, virtually ignores the term nursing-related and instead argues that feeding is not a technical nursing service. The Secretary's argument reflects a return to the discredited ideas of the 1970s and 1980s. During that time, State and Federal nursing home law assumed that assistance with activities of daily living, like feeding, bathing, transferring from bed to wheelchair and back again, were no big deal. They weren't medical tasks. They didn't seem that complicated. And because of that, Federal law didn't set any standards, and the majority of State law didn't set any standards as well. That was a mistake. And it led to a quality of care that the Institute of Medicine noted could be shockingly deficient. And it led Congress in the enactment of the nursing home reform law to establish certification requirements for nurse aides and to apply those certification requirements broadly to individuals providing nursing or nursing-related services. Can we get this down to, at least from my perspective of what we're here about, the question is, what does the phrase in the reform law, nursing-related service, mean? Isn't that the issue? Yes, Your Honor. The background, the, forgive me, histrionics, et cetera, don't make a darn bit of difference. It's what constitutes nursing-related service, right? That's correct, Your Honor. Has that as Congress ever defined that, that term? There is no definition in specifically in the statutory language aside from its use. So can we start with step one is that this phrase has not been defined by Congress, right? I think that what the point I'd like to make here, this is a State law. Can you do it this way? You're not giving up your case to admit that one way or another. Congress has not defined that term, correct? That's correct, Your Honor. Okay. So what we're looking to is whether the Secretary's definition in the revised regulation or the final regulation is consistent with the statutory language, right? The issue is whether to determine the clear intent of Congress under step one of Chevron. And this Court has noted that ambiguity for Chevron purposes is a creature not of definitional possibilities, but of statutory context. Can we look at the language and look at its ordinary meaning first before we get into all the other stuff? That's a part of the process, certainly, Your Honor, the ordinary meaning of the language, nursing and nursing-related, as pointed out by Plaintiffs in the briefs, that nursing concerns the care of individuals, of ill individuals, and nursing-related is the care of all tasks related to nursing those individuals. Mr. Carlson, as I understood it in response to Judge Hawkins' question, you agreed that nursing and nursing-related are terms not defined by Congress. But are you then saying, but necessarily as a matter of statutory construction, those phrases must include a feeding assistant? They must be interpreted broadly, Your Honor, to include all assistance with activities of living provided in a nursing home. Let me make – let me get quite clear what your contention is, Mr. Carlson. Are you saying that it is a – it would be a wrong construction of the statute, as distinct from the authority of the Secretary, a wrong construction of the statute to find that a feeding assistant was not embraced within the term nursing or nursing-related? That's correct. Under Step 1 of Chevron, that – and given the language, the purpose, and the structure of the nursing home reform law, assistance with feeding and assistance with other activities of daily living is – are nursing-related services. And because of that, they must be performed according to congressional intent by individuals who have – are least established, certified as nurse aides. And this is in contrast to the situation prior to the nursing home reform law, when this type of service could be provided by individuals with no training whatsoever. This was one of the – the – in the nurse home reform law, the nurse aide certification requirements have been recognized as a cornerstone of those provisions. And the reason being that in a nursing home, 90 percent of the care is provided not by nurses, not by the individuals, the licensed nurses with college degrees, but by the unlicensed individuals, the nurse aides who help nursing home residents with activities of daily living. You see, I'll tell you, Mr. Carlson, I'm speaking obviously only for myself, but I think – I think by making – making the argument that the statute must be read your way as a matter of statutory construction, you're – that's a harder advocate's job than arguing that the commissioner, in promulgating a rule as he did, was – was going further, or is going farther than was appropriate given what I take it was a prior considerable period of construction that ran the other way. I think it's important here to note, Your Honor, that that prior period, during that prior period from 1991 until 2002, the Secretary took the same position that plaintiffs are taking today and have taken into this – in this litigation, that the – that the nursing home reform law prohibited the Secretary from ruling that feeding was not a nursing or nursing-related service. So I – I – I understand your – your point, certainly, and plaintiffs certainly contend that the – the decision of the Secretary here to promulgate a feeding assistant frustrates congressional purpose and is – is not an appropriate use of – of the Secretary's discretion. You understood those prior statements, the formal statements by the Secretary as to what the statute meant? Yes, Your Honor. The Secretary – the Secretary stated in the communications with Wisconsin and North Dakota that the Secretary did not have the authority to allow feeding assistant programs, not that – and the Secretary maintained during that time from 1991 to 2002 that the Secretary's hands were tied. That was the position of the – of the Secretary, and that is the position of resident counsels of Washington and the long-term care ombudsman program, that the Secretary's hands are tied, and they're tied for a very good reason that in the – in the previous period in nursing homes, there was this assumption that these services were nonmedical and thus not all that important, and that was a mistake. The nursing home reform law, in enacting that, Congress wanted to set a floor for these individuals. Recognizing that 90 – that 90 percent of the care in nursing homes is provided by nurse aides, Congress intended to establish that floor for nonlicensed individuals, something much lower than college degrees, obviously, held by the licensed nurses, but something that was at least considered adequate but not – not extraordinarily onerous, which consists of – Okay. You've now used more than half of your time arguing that the statute requires the construction that you urged in district court. What's your next best argument? That this – that this action by the Secretary frustrates congressional purpose in establishing – it frustrates the congressional purpose of establishing an adequate quality of care for the assistance with activities of daily living provided in nursing homes. And the Secretary's position in this case should – should not be given deference. As pointed out, the Secretary has changed position without an adequate explanation of his – of his change in legal position. Well, first of all, the first position was informal. Will you concede that was not a formal regulation? It was not in the promulgation of a regulation. That's correct, Your Honor. And the Secretary made a – pursuant to the APA, a notice of proposed rulemaking, correct? That's correct, Your Honor. And received, what, a little over 6,000 comments? That's correct. Ninety-nine percent of which supported the proposed regulation? As pointed out in the district court, Your Honor, the vast majority of those comments were form letters that were generated by the – by the lobbying arm of the nursing facility. After the public comment was received and the Secretary acted, can you point to anything in the congressional history of this – the reform legislation that – that suggests that Congress meant to require that nursing-related services equated to assistance in the feeding of residents without complicated feeding problems? What I – Is there some statement by the – by the person who introduced this legislation, is there something in the Joint House-Senate report, is there anything in the congressional history that suggests this, that supports your argument? In the – in the House report that's cited in Plaintiff's brief, Your Honor, it's recognized that hands-on care, you know, the nurse aides provide the bulk of the – of the hands-on care, and so there's this connection between the – the nurse's aides and hands-on care, which is – which is consistent with the position of Plaintiff. It doesn't directly say feeding in the same way that the House report doesn't pull out other assistance of activities with – of daily living. They're all part of the package of those services provided to – to nursing-home residents, the care that nursing-home residents need on a daily basis in order to maintain their health. Would assistant rolling someone in a wheelchair being nursing-related service? No, Your Honor. Would you concede that that's hands-on? No, Your Honor. Would helping a nursing-home patient on with a jacket or a coat or a robe be nursing-related service? It may be, Your Honor. What I'd like to suggest here is that the – that this case concerns feeding of residents, which is – and it certainly involves the health of residents. The nutrition is important. The danger of choking is present. And aspiration is – the danger of aspirating for a month. But there is that exception for complicated situations, right, that if there's a complex issue with feeding, then a nurse is required, a certified person. That ignores the reality of life in a nursing-home, Your Honor. But isn't that – there is that exception, right? The Secretary's position in this regulation is that the feeding assistant regulation would not apply to individuals with complicated feeding problems. But that's a – Does the Secretary define complicated? The Secretary states that complicated includes but is not limited to difficulty in swallowing and recurrent aspiration – recurrent aspirations. So there's – that's the level of detail that's in the regulation. But the issue, again, is that nursing facility residents are – present a variety of complications, and the intent of the nursing-home reform law is to make sure that there is adequate care provided by adequately trained individuals. And that the – it would violate the purpose of the nursing-home reform law if it were interpreted in such a way that individuals with little or no training were providing care. This is a very important case for nursing-home residents because it is the first case to interpret this term, nursing or nursing-related services. And the Secretary's interpretation, if followed for other activities of daily living, would allow – would similarly allow nursing facility care to be pieced out for individuals providing bathing assistance or transferring assistance for other work to be deemed uncomplicated and then be performed by individuals with little or no training, which is – which is – which conflicts with the congressional intent to make sure that this work is done by individuals who have this moderate amount of training, again, 75 hours, not a nurse's licensing, but a moderate amount of training. Yes, Your Honor. Mr. Carson, I've just been looking at pages 48 to 49 of your brief to – the references to prior constructions of – which – by the agency, which corresponded with your view. I didn't see that the samples given there were communications from the Secretary. The answer on HCFA website, letter from HCFA administrator, I think you said that there were prior constructions by the Secretary. Is that right, or are they just not listed here? The communications are from representatives of the Secretary working for the Health Care Financing Administration. For example, on excerpt of records, roughly pages 45 through 55 are – for example, 50 and 51 is from the regional administrator from the Department of Health and Human Services. But we didn't have formal statements by the Secretary as to what the statute required. Is that right? No, but by the CMS administrator, for example, on pages 48 and 49 of the executive record, it contains a letter from Nancy Ann Mendeparle. So it's conceded that there was not a regulatory pronouncement during that period of time, but the CMS, of course, administers this program, and the administrator of CMS herself wrote to States explaining the position that she had no discretion but to deny approval of feeding assistant programs. All right. Thank you, counsel. Thank you, Your Honor. May it please the Court, my name is Joshua Waldman. I'm here from the United States Department of Justice to represent the Secretary of the HHS. I think I'd like to take the case back to Chevron at the first instance because, after all, I think everyone realizes this case is governed by Chevron. The first question, of course, is whether a precise question and issue has been dealt with unambiguously by Congress. As all parties, I think, realize there's no definition of the phrase nursing or nursing-related services in the statute. The plaintiffs have found nothing in the legislative history, neither have I, that would give any sort of dispositive answer to the question before the Court. There are competing dictionary definitions, but I think that only sort of underscores the ambiguity in the statute. Given that there's ambiguity, we move on to Chevron Step 2, and the only question there is whether the Secretary's interpretation of the statute, as expressed in the regulation, is a reasonable one. And I think that that's eminently the case here. The dictionary defines, among other things, the word nursing with reference to a certain amount of health-related training. And the Secretary looked at the task we're talking about here, feeding assistant limited to people who have no complicated feeding problems, and said that is such an elementary task, something so basic, that it doesn't rise to the level of nursing or nursing-related services. It doesn't necessarily rise to that, and I'm going to adopt that regulation that would permit States to use these types of feeding assistants. How are we supposed to know what a nursing or nursing-related function is? Well, I think that there are a couple answers to that. I mean, first of all, because the statute is ambiguous, the person who gets to decide that in the first instance is the Secretary. Congress delegated the task of filling in the gaps in this statute to the Secretary. And the Secretary That's not exactly an answer, is it? Well, it's the first part of the answer. The second part of the answer is, I think the Secretary, like anyone would, first just looks to common sense, just looks at the activity in question and says, is this the type of thing that I think really requires the kind of training that we associate with the word nursing? They also the Secretary then uses his own expert judgment. The Secretary then issues a proposed rulemaking and solicits views from the general public. And as Judge Hawkins pointed out, we received over 6,000 comments. The overwhelming majority of them supported this rule. And then you look to actual experience. Mr. Carlson is saying that if we, as I understand it, that if we accept that the Commissioner was acting reasonably here, he or she could in the future just as reasonably decide that the person who comes in at midnight to check one's vital statistics is not performing a nursing function, or the one that comes in at 2.30 a.m. and hands one a medication is not performing a nursing function, if the Commissioner so says. Would that be right? I'm not sure I follow the question. I'm trying to offer examples of other functions that might be administered to the patient. He's making the argument there could be many other single-task providers. Is that the case? It's a very slope argument, like what's next. Right. If you say this is okay. I think that there's a real practical limitation to that. And the first is that feeding assistance, I wouldn't say it's unique, but it's different from other types of tasks in that there are a number of people who have no complicated problems, and so all they need is someone, say, to provide dinner conversation or cut their food, where some of these other tasks, you're dealing with people who typically there's a lot of complicated problems there. And so having sort of a single-task provider is sort of not practical. The second is that the statute itself provides another practical limitation on this slippery slope problem. And it's this. According to the reform law, any time you have a patient in a nursing home, the resident the physician and the nurses need to make a plan of care, a plan of care that's updated periodically, and the reform law also requires a nursing home to provide exactly the kind of care that all those plans require. So if you imagine a nursing home, for example, a hypothetical one where everyone had almost no problems at all, I suppose in theory you could populate that, you could staff that with a bunch of single-task workers. But the reality is that people in nursing homes do have problems, and so you couldn't have a bunch of single-task workers who could only do uncomplicated tasks and staff them only with that. Because the reform act was not passed in a vacuum. Its purpose was to upgrade and subject to more definitive regulation. The operation of nursing homes is something that's becoming increasingly important as the population greys and reaches older age. What's wrong with saying to the Secretary that if you have a choice in defining a term under the statute, why not select a choice that's consistent with the purpose of the law, and that is to upgrade nursing home care? What's wrong with that? I think there's two things wrong with it. One is a policy reason, and one is a legal reason. The legal reason, briefly, is that these, once there's an ambiguous section of the statute, there's an implicit delegation to the Secretary to fill in those gaps. And it's the Secretary to determine whether or not, in fact, his interpretation will improve or degrade nursing home care. The more sort of direct, you know, on-the-ground answer is that we don't think that this type of regulation will degrade patient care at all. In fact, the plaintiffs, you know, that's the main theme of their brief, but they haven't produced one piece of evidence to show that feeding assistance will degrade patient care. In fact, the only experience that we have prior to the regulations was that in Wisconsin and North Dakota, and it didn't show any degradation of care at all. And you need to – I think what you need to keep in mind here is there was a very real practical problem going on that HHS was trying to address, and it was this. In a perfect world, we'd have enough nurses' aides to deal with all the problems for everyone, but the Secretary looked around and said, that's just not the reality. We can't fill all those positions, and what nurse aides are doing is that they're concentrating their tasks and their time and their energy on the people with really – who don't have complicated problems, don't really get the attention that they need at all. And the result from that is they're either not eating, or they're not eating enough, or they're not eating a nutritious meal. And all for the lack of someone to do something as simple as sit with them and talk with them during a dinner – provide dinner conversation, or cut their food, or spoon feed them. And so what the Secretary, I think, very sensibly did is that this is a situation that we don't really like to see, and if we had all the nurse aides that we wanted, that would be great. But the feeding assistance limited only to people who have no complicated feeding problems is a great way to solve this problem. So the discretion accorded to the Secretary in an instance like this is that any construction or interpretation of this phrase would be okay as long as it didn't make things worse? Well, I don't – I don't know that I would go so far as to say any interpretation. Obviously, the interpretation in the first instance needs to bear some resemblance to the statute. The statutory text does provide, you know, some constraints here, but it provides a fair amount of flexibility. And that's something that Congress has traditionally done in areas like Medicare and Medicaid. And – because these are very complicated issues. And the Secretary and the agency is facts on the ground, and that's exactly why Congress delegates these types of things within limits to the Secretary. So I think we would say as long as our interpretation is consistent with the statute and within the confines that Congress set, and is also consistent with the purpose of the statute, that it's an entirely reasonable thing to do. Would it be fair to say that the primary practical effect of this construction amendment is to reduce the cost to nursing home operators of operating their facilities? I think that there probably will be some lowering of costs. But, of course, they'll be hiring people who would provide service that wouldn't otherwise be provided in the absence of the regulation. It's not as if HHS said, well, you know, let's come up with some great way to cut costs for nursing homes, and that's sort of our primary goal here. What they did is they said there's not enough service being provided. We can't fill the need solely through nurse aides. Is there something that we can look to, and they looked to Wisconsin and North Dakota, that would tell us whether we could provide more flexibility for the States consistent with Congress's mandate and solve this problem? And they said, you know, we have seven years of experience in Wisconsin using a similar type of regulation, and it worked. And I think it's exactly the kind of thing that Congress intends is for, within the confines of the statutes, for agencies to continually monitor what's going on in the real world and use the flexibility given to them in the statute to fill gaps by helping people in the real world. This is exactly what's going on in this regulation. Mr. Waldman, we understand that starting 10 years ago in 97, we had the agency saying there is not a way within the law for HSQB to accept your proposal to allow other than certified nurse aides to feed residents. The Secretary has now jettisoned that view. Can we assume that if the new Secretary in 2009 said, gee, there was a lot of wisdom in 1997, we're going to throw out the current liberality that allows uncertified people to act as feeding aides? Would the new Secretary be in a position, do you think, to go back to the old view? I do. I think that the statute is ambiguous. It permits the view that was taken by, not the Secretary, but subordinates in some informal letters, and it permits the interpretation taken by the Secretary now. And, you know, this case is governed by Chevron, and Chevron is a perfect example of that. That was a statutory interpretation under the Carter administration that was changed under the Reagan administration. And what the Court said is, you know, sometimes new administrations come in and they make a 180 change. Sort of that's what policy and politics is all about, and there's nothing about Chevron that says you can't do that. You need to provide a reasoned explanation for it, and I think the agency, all the things that I said before are the reasonable explanation, the facts on the ground, the experiences of Wisconsin and North Dakota. But, you know, I do think that there's enough flexibility here. You know, the plaintiff's reading was something, you know, the bottom line is something that the agency subordinates agreed with at some point. I think there's enough flexibility. Is the Chevron deference that you urge is owed here, is it qualified in any way by this, by the four years of different construction that preceded it? No, I don't think that it is at all. Chevron doesn't set any sort of a limit on deference where if a policy was in place for a certain amount of time, then a reversal gets less deference. And the only thing that's we have case law that says that. We have case law that says that. If it's been around for a long time. If you've taken an inconsistent position, you do get a deference. But the Secretary's taken an inconsistent position.  Because here we don't have the Secretary taking an inconsistent position. Well, that's a fine distinction here. Right. Anyway, we do have a case law. Right. But I mean, I think the point is, is it wasn't exist. This was a regime that's been in place, you know, for 50 years or something like that. It was a few years. And then the Secretary sort of looked at the facts on the ground and decided, you know, I need to give a reason. But I have a slightly different question. Because I think part of what makes the Secretary's current position at least not inconsistent with the nursing or nursing-related services is the fact that if there's a complicated feeding problem, then you need to have a certified person doing it. But it seems as though what constitutes a complicated feeding problem is pretty much undefined. Well, the It's like a huge loophole in this whole requirement. Well, there is a regulation that is I know it says such as. Such as. Right. I mean, it is expansive. But it's not as if the feeding assistants are going around determining this. Who is determining it? The actual licensed nurses who revise the patient's plans of care that I referred  They make the decision about whether someone has a complicated feeding problem. So each individual nursing home makes a decision. So a nursing home that does want to save money and not have nurses could decide, oh, you know, so this person has chronic bronchitis, but they can still be fed by a feeding assistant. Well. It's not listed in that little definition. Well, I mean, I suppose it's always in theory an option for a nursing home to take an unreasonable interpretation of a regulation. But that's something that the HHS then enforces. And if there's a complaint by a resident, you know, I think that would be dealt with. I think there's various ways of dealing with that. But, you know, I can't guarantee that everyone applying this regulation is going to be 100 percent reasonable. That's just not the way the world works. Is there anywhere else we can look to see what HHS determines would be a complicated feeding problem? I see my. You can answer the question. No, I think we only have the regulation. Of course, if there was a question about it, I think that a nursing home would be wise to contact a regional institution and ask what the answer to a particular question is. You know, hopefully the nursing homes that also are on the side of caution, they don't want lawsuits any more than anyone else does, and they're not there to sort of force feeding assistants on people that it's really not called for. But if I could just add one other point, with Your Honor's permission, is when you got into this question about complicated feeding problems you were talking about, that's one reason why it's not necessarily inconsistent with the prior statements. I think the other reason is that none of those statements purported to say, you know, when we think feeding is part of nursing or nursing-related services, that that's the only permissible construction of the statute. They adopted, you know, whoever those subordinates were did take that position that it was included, but they didn't say it's unambiguously so as mandated by Congress in the statute. If there are no further questions. All right. Thank you, counsel. Resident counsels of Washington v. Levitt will be submitted.
judges: Hawkins, Wardlaw, Pollak